1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
9                  AT TACOMA

10   TIMOTHY G O'HAVER,

11                        Petitioner,          CASE NO. 3:15-CV-05797-RBL-JRC

12         v.                                  REPORT AND RECOMMENDATION

13   VINCENTE M RUIZ                           NOTED FOR: MARCH 4, 2016

14                        Respondent.

15

16         The District Court has referred this petition for a writ of habeas corpus to United States

17   Magistrate Judge, J. Richard Creatura. The authority for the referral is 28 U.S.C. § 636(b)(1)(A)

18   and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner seeks relief from a state

19   conviction, thus, the petition is filed pursuant to 28 U.S.C. § 2254.

20         Petitioner Timothy G. O'Haver seeks § 2254 habeas relief from his conviction of two

21   counts of assault. Dkt. 10, Exhibit 1. Petitioner raises twelve grounds for relief: (1) denial of the

22   right to present a defense with respect to sub-part 1 – use of perjured testimony and sub-part 2 –

23   exclusion of evidence; (2) insufficient evidence; (3) denial of the right to a fair trial based on

24   sub-part 1 –perjured testimony and sub-part 2 - trial court's statement related to petitioner's in-

1    custody status; (4) violation of right to a speedy trial; (5) prejudicial jury instruction; (6)

2    exclusion of evidence; (7) improper opinion testimony; (8) improper admission of evidence; (9)

3    improper denial of motion for mistrial; (10) perjury during testimony related to domestic

4    violence; (11) prosecutorial misconduct; and (12) cumulative error. Dkt. 1. Respondent argues

5    that petitioner failed to properly exhaust grounds 1 (sub-part 1), 2, 3 (sub-part 1), 4, 5, 7, 8, 10,

6    11 and 12 and that grounds 1 (sub-part 2), 3 (sub-part 2), 6, and 9 fail on the merits. Dkt. 9.

7    Petitioner filed a reply. Dkt. 11.

8         The Court finds that petitioner failed to properly exhaust grounds 1 (sub-part 1), 2, 3

9    (sub-part 1), 4, 5, 7, 8, 10, 11 and 12 because he failed to invoke one round of the state's

10   appellate review process.  Even though petitioner raised some of these claims on federal grounds

11   in one state court, he did not do so in both courts, and although petitioner raised some of these

12   claims on state-law grounds, he did not raise them on federal grounds. With respect to

13   petitioner's exhausted claims, he alleges that the trial court violated his right to a fair trial.

14   However, the record reflects that neither the exclusion of evidence nor the court's statement that

15   petitioner contends implied he was in custody were prejudicial. Thus, the Court recommends

16   dismissing petitioner's unexhausted claims and denying his exhausted claims as he has failed to

17   demonstrate that the state court's adjudication of his claims was contrary to, or an unreasonable

18   application of federal law.

19        Petitioner also filed a motion to appoint counsel. Dkt. 11. Because the undersigned has

20   determined that the petition be dismissed as to his unexhausted claims and denied as to his

21   exhausted claims, petitioner's motion to appoint counsel should also be denied as moot.

22   //

23   //

24

REPORT AND RECOMMENDATION - 2

## BASIS FOR CUSTODY AND FACTS

Petitioner was convicted of one count of second degree assault and one count of fourth degree assault. Dkt. 10, Exhibit 1. He was sentenced to 41 months of confinement and 18 months of community custody. *Id.*

The Washington Court of Appeals summarized the facts in petitioner's case as follows:

Timothy O'Haver came home from work. He and his wife consumed several drinks of vodka and juice. After a couple hours, they began arguing. [Footnote 1. 4 Report of Proceedings (RP) at 197, 224.] During the argument, O'Haver grabbed his wife and sprayed her with the hose from the kitchen sink. She slipped on the water and fell to the floor. [Footnote 2. 4 RP at 231.] The wife ran out of the house.

The neighbor next door, and his friends John Hoover and John Humen, witnessed O'Haver chasing his wife outside. The wife either fell or O'Haver pushed her down. [Footnote 3. RP at 247, 272; 5 RP at 345.] O'Haver then struck his wife, although the accounts varied whether he did so with an open hand or a fist. [Footnote 4. 4 RP at 272; 5 RP 349.] O'Haver grabbed his wife and went back into their home, closing the door. [Footnote 5. 5 RP at 347.]

The three continued to hear screaming coming from the O'Haver house. The neighbor entered the house through a back door. [Footnote 6. 5 RP at 349.] The neighbor testified that he distracted O'Haver by insulting him in an attempt to get O'Haver to focus on him so that his wife could escape. [Footnote 7. 5 RP at 352.] The wife left and O'Haver pushed the neighbor. When O'Haver grabbed a gun, the neighbor fled to his house with O'Haver running behind him. [Footnote 8. 5 RP at 355-56.]

The neighbor called for his wife to get the "old lady," a term used by the neighbors for their gun in the event of an emergency. [Footnote 9. 5 RP at 302, 355.] The neighbor's wife retrieved the gun and gave it to her husband. [Court's footnote omitted.] O'Haver testified that he was aware of the neighbors' code for their gun and that he feared for his wife's safety. The wife told O'Haver that she was in the house on her own free will and told him to go home and sleep it off. [Footnote 11. 5 RP at 304.].

O'Haver banged on the neighbor's front door with a baseball bat trying to get inside. In the process, he broke the door. O'Haver also attempted to enter through windows around the house while shouting for his wife. [Footnote 12. 5 RP at 307.] O'Haver testified that he ran back to his house to retrieve his guns when the

neighbor threatened to shoot him through the door. [Footnote 13. O'Haver owned two handguns and a shotgun. 4 RP at 197.] O'Haver reached through the broken front door hitting the neighbor with his gun. [Footnote 14. 5 RP at 359.]

The police arrived at the scene. Both parties dropped their weapons. The police arrested O'Haver. The State introduced evidence of the neighbor's broken door and the broken baseball bat.

The State charged O'Haver with four counts of assault, but a jury found him guilty of only two: second degree assault of the neighbor and a lesser included count of fourth degree assault of the wife.

Dkt. 10, Exhibit 2 at 1-3.

## STATE PROCEDURAL HISTORY

Through counsel and *pro se*, petitioner appealed to the Washington Court of Appeals. Dkt. 10, Exhibit 3 (Brief of Appellant), Exhibit 6 (Statement of Additional Grounds).  The Washington Court of Appeals affirmed the convictions and denied petitioner's appeal in an unpublished opinion. Dkt. 10, Exhibit 2.

Petitioner, through counsel, petitioned for review in the Washington Supreme Court. Dkt. 10, Exhibit 8 (Petition for Review). The Washington Supreme Court denied review without comment. Dkt. 10, Exhibit 9. The Washington Court of Appeals issued the mandate on December 19, 2014. Dkt. 10, Exhibit 10.  Petitioner did not file a collateral attack of his sentence.

## EVIDENTIARY HEARING

The decision to hold a hearing is committed to the Court's discretion.  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Landrigan*, 550 U.S. at 474.  In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court.  *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011).  A hearing is not required if the

allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d).  *Landrigan,* 550 U.S. at 474.  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Id.*; *see also Cullen,* 131 S. Ct. 1388 (2011). "[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998).

Petitioner's habeas claims raise only questions of law and may be resolved by a review of the existing state court record. Therefore, the Court finds it unnecessary to hold an evidentiary hearing.

## DISCUSSION

**A.  GROUNDS FOR RELIEF**

Petitioner presents the Court with twelve grounds for relief:

1.  Ground One: Whether petitioner was denied the right to present a defense with respect to (1) sub-part 1 – use of perjured testimony and (2) sub-part 2 – exclusion of evidence?

2.  Ground Two: Was the evidence insufficient to support defendant's convictions?

3.  Ground Three: Whether petitioner was denied the right to a fair trial based on (1) sub-part 1 - perjured testimony and (2) sub-part 2 – the trial court's statement related to petitioner's in custody status?

4.  Ground Four: Whether petitioner's right to a speedy trial violated?

5.  Ground Five: Whether the reasonable doubt jury instruction was prejudicial by lessening the requirements of the prosecution to prove beyond a reasonable doubt petitioner's guilt?

6.  Ground Six: Whether the trial court erred in excluding petitioner's testimony about incidents of violence by his wife and neighbor which caused him to fear injury?

7.  Ground Seven: Whether Officer Welsh offered improper opinion testimony when he told the jury he had information crimes had been committed, including attempted murder, and that the situation was extremely dangerous and thereby denying petitioner a fair trial?

8.  Ground Eight: Whether the trial court erred in admitting Officer Welsh's police report as a recorded recollection?

9.  Ground Nine: Whether the trial court erred in denying petitioner's motion for a mistrial after alerting the jury to his in-custody status?

10. Ground Ten: Whether the untruthful testimony that petitioner had committed domestic violence in the past denied petitioner a fair trial?

11. Ground Eleven: Whether the prosecutor's statement that he needed to talk to the "victim advocate" indicate his opinion as to petitioner's guilt?

12. Ground Twelve: Cumulative error.

Dkt. 1-1 at 1-4.

**B.  EXHAUSTION**

Respondent concedes that petitioner properly exhausted grounds 1 (subpart 2), 3 (subpart 2) 6 and 9. Dkt. 9 at 5. Respondent argues that petitioner failed to properly exhaust grounds 1 (use of perjured testimony, subpart 1) 2, 3 (use of perjured testimony, subpart 1), 4, 5, 7, 8, 10, 11 and 12 because he failed to properly raise those claims at every level of the state court's review. *Id.* at 5, 8.

*1.    Exhaustion Standard*

A state prisoner seeking habeas corpus relief in federal court must exhaust available state relief prior to filing a petition in federal court. *See* 28 U.S.C. § 2254. As a threshold issue, the court must determine whether or not petitioner has properly presented the federal habeas claims to the state courts. 28 U.S.C. § 2254(b)(1) states, in pertinent part: (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that: (A) the applicant has exhausted the remedies available in the courts of the state; or (B)(i) there is an absence of available state corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant. If respondent intends to waive the defense of failure to exhaust state remedies, respondent must do so explicitly.  28 U.S.C. § 2254 (b)(3).

Claims for relief that have not been exhausted in state court are not cognizable in a federal habeas corpus petition. *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994).  A petitioner must properly raise a habeas claim at every level of the state courts' review.  *See Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *See also Rose v. Lundy*, 455 U.S. 509, 518-19 (1982).  A complete round of the state's established review process includes presentation of a petitioner's claims to the state's highest court. *James*, 24 F.3d at 24.

In order to fairly present a claim, the prisoner must alert the state courts to the fact that he is asserting claims under the United States Constitution. *Duncan v. Henry*, 513 U.S. 364, 365 (1995).  The prisoner must specifically characterize his claims as federal claims, either by

referencing specific constitutional provisions or by citing to relevant federal case law. *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000), *opinion amended*, 247 F.3d 904 (9th Cir. 2001).

Underlying the requirement that a petitioner exhaust his claims is the principle that, as a matter of comity, state courts must be afforded "the first opportunity to remedy a constitutional violation." *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981); *Jackson v. Roe*, 425 F.3d 654, 657 (9th Cir. 2005) (citation omitted) (Requiring a petitioner to exhaust his claims has long been recognized as "one of the pillars of federal habeas corpus jurisprudence."). "Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory." *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005).

1. *Ground 1 (sub-part 1) and Ground 3 (sub-part 1)– Denial of Right to Present a Defense: Use of Perjured Testimony*

Petitioner raised ground one, sub-part one before the Washington Court of Appeals on federal grounds. Dkt. 10, Exhibit 6 at 2 (no page numbers, Court's page 2). In his petition for review with the Washington Supreme Court, petitioner failed to raise this ground for relief at all. Dkt. 10, Exhibit 8.  Petitioner failed to properly raise this claim at every level of the state courts' review. *See* Dkt. 10, Exhibit 8. *See Ortberg*, 961 F.2d at 138. Therefore, petitioner failed to exhaust his state court remedies with respect to ground one, sub-part one.

2. *Ground 2 – Insufficient Evidence*

Petitioner raised ground two in his statement of additional grounds before the Washington Court of Appeals on federal grounds, citing to the Sixth Amendment and his right to a fair trial. Dkt. 10, Exhibit 6 at 2.  Petitioner did not raise this ground in his petition for review before the Washington Supreme Court. Dkt. 10, Exhibit 8. Petitioner failed to properly raise this claim at every level of the state courts' review. *See* Dkt. 10, Exhibit 8. *See Ortberg*, 961 F.2d at 138. Therefore, petitioner failed to exhaust his state court remedies with respect to ground two.

3.  *Ground 3 (sub-part 1) – Denial of Right to Fair Trial: Use of Perjured Testimony*

Petitioner raised ground three, sub-part one in his statement of additional grounds before the Washington Court of Appeals on federal grounds. Dkt. 10, Exhibit 6 at 2 (*citing* Sixth Amendment). Petitioner failed to raise the claim before the Washington Supreme Court. Dkt. 10, Exhibit 8. Petitioner failed to properly raise this claim at every level of the state courts' review. *See* Dkt. 10, Exhibit 8. *See Ortberg*, 961 F.2d at 138. Therefore, petitioner failed to exhaust his state court remedies with respect to ground three, sub-part one.

4.  *Ground 4 – Violation of Right to Speedy Trial*

Petitioner raised ground four in his statement of additional grounds before the Washington Court of Appeals in federal constitutional grounds. Dkt. 10, Exhibit 6 at 2, 17 (*citing* Sixth and Fourteenth Amendments). Petitioner failed to raise the claim before the Washington Supreme Court. Dkt. 10, Exhibit 8. Petitioner failed to properly raise ground four at every level of the state court's review and thus, he has failed to exhaust his remedies with respect to this ground for relief. *See Ortberg*, 961 F.2d at 138.

5.  *Ground 5 – Reasonable Doubt Jury Instruction*

Petitioner raised ground five in his statement of additional grounds before the Washington Court of Appeals and raised the claim on federal grounds. Dkt. 10, Exhibit 2 at 2, 6, 9-12 (*citing* Sixth Amendment). Petitioner failed to raise the claim before the Washington Supreme Court. Dkt. 10, Exhibit 8. Petitioner failed to properly raise ground five at every level of the state court's review and thus, he has failed to exhaust his remedies with respect to this ground for relief. *See Ortberg*, 961 F.2d at 138.

6.  *Ground 7- Improper Opinion Testimony of Officer Walsh*

1   Petitioner raised this claim before the Washington Court of Appeals but failed to raise the

2   claim on federal grounds. Dkt. 10, Exhibit 3 at 30-33 (*citing* only state law cases). Petitioner

3   raised the claim before the Washington Supreme Court, but failed to raise the claim on federal

4   grounds. Dkt. 10, Exhibit 8 at 19-20 (citing only state law cases). In addition, petitioner's broad

5   claim alleging that "[t]he error was constitutional under the state and federal constitutions

6   because it invades the province of the jury and denies the accused his or her right to jury trial.

7   *State v. Thac,* 126 Wn. App. 297, 312, 106 P.3d 752 (2005); [*State v.*] *Sutherby,* 144 Wn.2d

8   [755], 617 [sic] [2001]," *see* Dkt. 10, Exhibit 8 at 20, cannot be read to sufficiently raise a

9   federal constitutional issue. *See Shumway,* 223 F.3d at 982. Thus, petitioner failed to specifically

10   categorize his claims as federal claims. *See Lyons,* 232 F.3d at 670. Therefore, petitioner failed to

11   exhaust his state court remedies with respect to ground seven.

12       *7.   Ground 8 – Improper Admission of Police Report as Recorded Recollection*

13   Petitioner raised this ground before the Washington Court of Appeals, but failed to raise

14   the claim on federal grounds. Dkt. 10, Exhibit 3 at 33-36 (*citing* to Washington Court Rule ER

15   803 and state law cases). Petitioner raised the claim before the Washington Supreme Court but

16   failed to raise the claim on federal grounds. Dkt. 10, Exhibit 8 at 12-15. Petitioner cited only

17   state law and failed to reference any federal law. *See id.* Thus, petitioner failed to specifically

18   categorize his claims as federal claims. *See Lyons,* 232 F.3d at 670. Therefore, petitioner failed to

19   exhaust his state court remedies with respect to ground eight.

20       *8.   Ground 10 – Improper Admission of Testimony Related to Prior Domestic Violence*

21   Petitioner raised ground ten before the Washington Court of Appeals but failed to raise

22   the claim on federal constitutional grounds and cited only to state law cases. Dkt. 10, Exhibit 3 at

23   26-28. In his petition for review before the Washington Supreme Court, petitioner raised the

24

REPORT AND RECOMMENDATION - 10

claim on state law grounds only. Dkt. 10, Exhibit 8 at 17-19. Petitioner cited only to state law and failed to reference any federal law. *See id.* Thus, petitioner failed to specifically categorize his claims as federal claims. *See Lyons,* 232 F.3d at 670. Therefore, petitioner failed to exhaust his state court remedies with respect to ground ten.

9.  *Ground 11 – Prosecutor's Statement Referring to Victim Advocate*

Petitioner raised the ground for relief on federal grounds in his appeal before the Washington Court of Appeals. Dkt. 10, Exhibit 3 at 28-30 (*citing United States v. Young,* 470 U.S. 1 (1985)). Petitioner failed to raise this ground in his petition for review before the Washington Supreme Court. Dkt. 10, Exhibit 8. Petitioner failed to properly raise ground eleven at every level of the state court's review and thus, he has failed to exhaust his remedies with respect to this ground for relief. *See Ortberg*, 961 F.2d at 138.

10. *Ground 12 –Cumulative Error*

Petitioner raised this claim on federal grounds in his brief before the Washington Court of Appeals, *see* Dkt. 10, Exhibit 3 at 36-38, however, he failed to raise the claim before the Washington Supreme Court. Thus, petitioner failed to properly raise ground twelve at every level of the state court's review and he has failed to exhaust his remedies with respect to this ground for relief. *See Ortberg*, 961 F.2d at 138.

11. *Procedural Bar*

Respondent argues that grounds 2, 4, 5, 7, 8, 10, 11 and 12 are procedurally barred under RCW 10.73.090.  Dkt. 9 at 9. Respondent does not address whether ground 1, sub-part 1 and ground 3, sub-part 1 are also procedurally barred. *See id.*

Whether a claim is procedurally defaulted is distinct from whether a claim is exhausted in the habeas context.  *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002).  A claim is not

exhausted when the state court has never been presented with an opportunity to consider a petitioner's claims and that opportunity may still be available to the petitioner under state law. 28 U.S.C. § 2254(c).  In contrast, a claim is procedurally defaulted when it is clear that the state court has been presented with the federal claim but declined to reach the issue for procedural reasons or it is clear that the state court would hold the claims procedurally barred.  *Franklin v. Johnson*, 290 F.3d at 1230-31. If a petitioner's claims are procedurally barred under state law, they are deemed to be procedurally defaulted for purposes of federal habeas review.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Under Washington law, a defendant may not collaterally challenge a conviction more than one year after the conviction becomes final.  RCW 10.73.090(1).  *See also Aguilar v. Washington*, 77 Wn. App. 596, 603 (1995) (applying Washington's one-year time limit as a mandatory bar).  If a prisoner files a direct appeal of his conviction and sentence, "then the judgment is final when the appellate court issues its mandate 'disposing of the direct appeal.'" *In re Skylstad*, 160 n.2d 944, 948-49 (2007) (*quoting* RCW 10.73.090(3)(b)). Petitioner's conviction became final for purposes of state law on December 19, 2014. Dkt. 10, Exhibit 10. Because more than one year has passed since petitioner's conviction became final, claims 1 (sub-part 1); 2; 3 (sub-part 1); 4; 5; 7; 8; 10; 11 and 12 are now time-barred in state court. Because these claims are procedurally barred under Washington law, the claims are not cognizable in a federal habeas corpus petition absent a showing of cause and prejudice or actual innocence.

*12. Cause and Prejudice*

To show cause in federal court, petitioner must show that some objective factor, external to the defense, prevented petitioner from complying with state procedural rules relating to the presentation of petitioner's claims. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (*citing*

*Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  A petitioner cannot demonstrate cause to excuse a procedural default where the cause is fairly attributable to the petitioner's own conduct. *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992). Examples that may satisfy "cause" include "interference by officials" that makes compliance with state procedural rules impracticable, "a showing that the factual or legal basis for a claim was not reasonably available to counsel", or "ineffective assistance of counsel." *McCleskey*, 499 U.S. at 494 (*citing Murray*, 477 U.S. at 488).

Here, petitioner has not alleged any facts that establish cause or prejudice. Petitioner simply did not raise claims 1 (sub-part 1), 2, 3 (sub-part 1), 4, 5, 7, 8, 10, 11 and 12 under federal law at all levels of the state court.  Accordingly, petitioner has made no showing of cause or prejudice.

### 13. Fundamental miscarriage of justice

Petitioner could overcome the procedural bar in this case if he could show a fundamental miscarriage of justice would occur if his claims were not considered by the court.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The United States Supreme Court held that in order to demonstrate that petitioner suffered a fundamental miscarriage of justice, petitioner must establish that, viewing all the evidence in light of new reliable evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006) (*citing Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner did not present any new evidence demonstrating that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Therefore, there is no fundamental miscarriage of justice.

1    Because petitioner cannot excuse his procedural default, claims 1 (sub-part 1); 2; 3 (sub-

2    part 1); 4; 5; 7; 8; 10; 11 and 12 are not cognizable in the habeas corpus proceeding and should

3    therefore be dismissed.

4    **C. CLAIMS ON THE MERITS**

5    A habeas corpus petition shall not be granted with respect to any claim adjudicated on the

6    merits in the state courts unless the adjudication either: (1) resulted in a decision that was

7    contrary to, or involved an unreasonable application of, clearly established federal law, as

8    determined by the Supreme Court; or (2) resulted in a decision that was based on an

9    unreasonable determination of the facts in light of the evidence presented to the state courts.  28

10   U.S.C. § 2254(d).  Further, a determination of a factual issue by a state court shall be presumed

11   correct, and the applicant has the burden of rebutting the presumption of correctness by clear and

12   convincing evidence.  28 U.S.C. § 2254(e)(1).

13   *1. Ground 1 (Sub-Part 2) and Ground 6: Exclusion of Evidence and Right to Present a Defense*

14

15   In his first ground for relief (sub-part 2) and his sixth ground for relief, petitioner alleges

16   that the trial court violated his right under the Sixth Amendment to present a defense when it

17   excluded evidence that both his neighbor and his wife had committed prior acts of violence,

18   which supported his self-defense claim. Dkt. 1-1 at 1, 4. Petitioner alleges that he should have

19   been able to present evidence that his neighbor was an "unstable addict, a dangerous man, a

20   compulsive liar, and a primary aggressor." Dkt. 1-1 at 1. Petitioner alleges that evidence should

21   have been admitted related to his wife's prior incidents of uncontrolled rage and that she had

22   assaulted him both prior to and on the night of the incident. Dkt. 1-1 at 1.

23   To the extent that petitioner alleges the trial court erred in excluding evidence, a state

24   court's evidentiary rulings are not a proper subject for federal habeas corpus review.  "[I]t is not

1   the province of a federal habeas court to reexamine state court determinations on state law

2   questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (state court admissibility and

3   foundational rulings raise no federal habeas issues).  In conducting habeas review, a federal court

4   is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the

5   United States.  *Id*. (*citing* 28 U.S.C. § 2241).  The admission of evidence does not provide a basis

6   for habeas relief unless it rendered the trial "fundamentally unfair" in violation of due process.

7   *Id*. at 67–69; *see also Johnson v. Sublett*, 63 F.3d 926, 931 (9th Cir. 1995).

8          With respect to the right to present a defense, the Supreme Court has held that "[w]hether

9   rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory

10   Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees

11   defendants 'a meaningful opportunity to present a complete defense.'"  *Crane v. Kentucky*, 476

12   U.S. 683, 690 (1986) (*quoting California v. Trombetta*, 467 U.S. 479, 485 (1984)) (internal

13   citations omitted).  The right to present a defense is, however, not absolute.  *Montana v.*

14   *Egelhoff*, 518 U.S. 37, 41-42 (1996).  "[T]he accused, as is required of the State, must comply

15   with established rules of procedure and evidence designed to assure both fairness and reliability

16   in the ascertainment of guilt and innocence."  *Chambers v. Mississippi*, 410 U.S. 284, 302

17   (1973).  Accordingly, "'[t]he accused does not have an unfettered right to offer [evidence] that is

18   incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'"  *Egelhoff*,

19   518 U.S. at 42 (*quoting Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).

20          However, exclusion of evidence that is only marginally relevant or repetitive, or more

21   prejudicial than probative cannot give rise to a constitutional violation. *Crane v. Kentucky,* 476

22   U.S. 683, 689–90 (1986); *see also Holmes v. South Carolina,* 547 U.S. 319, 326–27 (2006).

23   Hence, states have wide latitude to establish rules excluding defense evidence from criminal

24

trials, "so long as they are not arbitrary or disproportionate to the purposes they are designed to serve." *United States v. Scheffer,* 523 U.S. 303, 308 (1998) (internal quotation marks omitted); *see also Wood v. Alaska,* 957 F.2d 1544, 1549 (9th Cir. 1992). The Supreme Court has noted "[o]nly rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson,* ⸻ U.S. ⸻, 133 S.Ct. 1990, 1992 (2013) (citations omitted).

The Washington Court of Appeals rejected petitioner's claim:

Both the Sixth Amendment of the federal constitution and article I, section 22 of the Washington Constitution guarantee an accused the right to present a defense. State v. Jones, 168 Wn.2d 713, 230 576 (2010). However, this right is not absolute; a defendant does not have the right to introduce evidence that is irrelevant or otherwise inadmissible. State v. Stacy, ___ Wn. App. ___, 326 P.3d 136, 143 (2014) (citing State v. Rehak, 67 Wn. App. 157, 162, 834 P.2d 651 (1992)). "Evidence is relevant if it has any tendency to make any fact that is of consequence to the case more or less likely than without the evidence." State v. Mee Hui Kim, 134 Wn. App. 27, 41 139 P.2d 354 (2006) (citing State v. Thomas, 150 Wn.2d 821, 857, 83 P.3d 970 (2004); ER 401).

In general, evidence of a person's character is inadmissible to prove "conformity therewith on a particular occasion." ER 404(a). However, an exception to this rule provides that "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused" is admissible." ER 404(a)(2). Thus, where a defendant asserts self-defense, evidence of the victim's violent disposition is a pertinent character trait because it is relevant to the question of whether the victim acted in conformity with his or her character by provoking the incident as the first aggressor. State v. Alexander, 52 Wn. App. 897, 900, 765 P.2d 321 (1988); United States v. Keiser, 57, F.3d 847, 853-54 (9th Cir. 1995). Evidence offered for this purpose is subject to the restrictions set forth in ER 404 and 405. Only the victim's reputation for violence is admissible, specific acts of violence are not. ER 405(a); Alexander, 52 Wn. App. at 901. O'Haver did not seek a first aggressor instruction and none was given.

Evidence regarding the victim's violent character may also be relevant to show the defendant's state of mind; in other words, the reasonableness of his or her belief that the use of force was necessary in self-defense. State v. Dyson, 90 Wn. App. 433, 438-39, 952 P.2d 1097 (1997) ("To establish self-defense, a defendant must produce evidence showing that he or she had a good faith belief in the necessity of force and that that belief was objectively reasonable."). Under those circumstances, because the character evidence is used to show state of mind,

rather than to show the victim acted in "conformity therewith," the restrictions of ER 404 and 405 do not apply. Keiser, 57 F.3d at 853. Evidence of specific acts is admissible provided the defendant was aware of the acts at the time. State v. Walker, 13 Wn. App. 545, 549-50, 536 P.2d 657 (1975).

At trial, the State objected to O'Haver's testimony that his wife had struck him during a prior incidence in 2007. O'Haver submitted an offer of proof that the incident with his wife had occurred during a stressful time while the parties were in the midst of a foreclosure. Alcohol also played a part in that incident. O'Haver woke up the next morning with a redeye. Because the 2007 incident was supported only by O'Haver's testimony, with no independent witnesses, no history of restraining orders or domestic violence orders entered against either party and occurred over five years ago, with no charges filed, the court found the evidence remote, unreliable, and insufficient to establish a claim of self-defense for his particular incident.

O'Haver then argues that the trial court erred in preventing him from testifying about his wife being fired from her cross-guarding job because she allegedly smashed a window of a car whose driver failed to follow her directions. He argues that the evidence was admissible under ER 404(b) to show her quarrelsomeness and thus her propensity for violence. Because O'Haver was not the object of that incident, the court found the evidence irrelevant and prejudicial. The court did not err in finding the evidence inadmissible.

O'Haver also related, in his offer of proof, testimonial evidence of various scenarios demonstrating the neighbor's propensity to become violent. O'Haver related two instances in which the neighbor illegally discharged a fun in the neighborhood. O'Haver did not witness either incident. The neighbor also told O'Haver that he had killed a man but did not supply any specific details; however, O'Haver admitted that he did not fully believe it to be true. O'Haver next asserted that his neighbor described himself as having an inability to control himself when aroused by the sight of blood. This "blood lust" allegedly caused the neighbor to viciously beat another person.

The court found the statements unreliable and not supportive of a claim of self-defense. O'Haver also related an incident in which the neighbor had a reaction with the medication he was taking that caused him to become violent with his spouse one night. No expert testimony was presented or offered to substantiate the claim that the neighbor's medication caused him to be violent. Finding that O'Haver had not established a foundation, the court ruled the evidence inadmissible. The court specifically stated its ruling did not limit O'Haver from testifying regarding any apprehension or fear that he experienced at the time of the incident to support his self-defense argument.

Defense counsel filed a motion for reconsideration regarding the court's denial. After hearing oral argument, the court reiterated its ruling with regard to the acts

of the wife, that the 2007 incident was remote, and that the allegation that she broke a car windshield did not establish a reputation for violence in the community.

With regard to the allegations of the neighbor's violent persona, the court found no indicia of reliability that could create a subjective intent on the part of O'Haver to create apprehension and fear. This was particularly true, here, where O'Haver testified that he returned to his home to retrieve his pistol and shotgun. Additionally, O'Haver's alleged fear for his wife is contradicted by the testimony that the wife said she was there on her own free will and that she clung to the neighbor's spouse. Under these facts, the trial court properly found no corroborating circumstances existed to show that these past instances would support O'Haver's theory that his wife was abducted.

O'Haver's reliance on State v. Wanrow, 88 Wn.2d 221, 224, 559 P.2d 548 (1977) for support that the evidence should have been admitted here is misplaced. The court in Wanrow involved instructional error where they jury was misadvised as to the particular circumstances it could consider in reaching a decision. As stated in State v. Martin, 169 Wn.App. 620, 628-29, 281 P.3d 315 (2012), review denied, 176 Wn.2d 1005, 297 P.3d 68 (2013):

> Thus, where a defendant claims self-defense, courts have admitted evidence of a victim's prior acts of violence to establish a defendant's reason for apprehension and the basis for acting in self-defense. [State v. Cloud, 7 Wn. App 211, 218, 498 P.2d 907 (1972).] But in self-defense cases, "[s]pecific act character evidence relating to the victim's alleged propensity for violence is not an essential element of self-defense." [State v. Hutchinson, 135 Wn.2d 863, 887, 959 P.2d 1061 (1998).]

Here, the court permitted general references to the volatile spousal relationship. O'Haver testified that he sprayed his wife with water to calm her down after she attacked him. O'Haver additionally testified that his neighbor entered his home uninvited and taunted him to support his objective belief that he needed to defend himself. The court was correct in ruling that any evidence of misconduct the night of the incident was inadmissible. The court instructed the jury on self-defense and no duty to retreat.

O'Haver had an opportunity to fully present his theory of the case that he acted out of fear for himself and fear for his wife. The excluded evidence did not violate O'Haver's right to present a defense. The State argues that O'Haver was not entitled to a self-defense instruction, but fails to cross-appeal the court's giving that instruction. Accordingly, we will not address the State's argument.

Dkt. 10, Exhibit 2 at 3-8 [state court footnotes omitted].

1    The evidence excluded here is the type of marginally relevant, speculative and non-

2  probative evidence that can be excluded without violating a defendant's right to present a

3  defense. *See Crane,* 476 U.S. at 689-90. As the state court noted, the evidence was too remote,

4  unreliable and unrelated to petitioner's claim of self-defense.  Dkt, 10, Exhibit 2 at 5-7, Exhibit

5  11, Verbatim Report of Proceedings, Volume VI, at 455, 461, 486.  Furthermore, the trial court

6  did allow the admission of evidence related to petitioner's relationship with his wife and that his

7  neighbor entered his home uninvited and taunted petitioner. Petitioner also had the opportunity to

8  present his theory that he acted out of fear.

9    The trial court's exclusion of evidence related to petitioner's wife and neighbor's prior

10  acts did not render the trial fundamentally unfair in violation of due process or the Sixth

11  Amendment right to present a defense.  *See Crane,* 476 U.S. at 689-90; *Egelhoff,* 518 U.S. at 42;

12  *Jackson,* 133 S.Ct. at 1992. Thus, the state court decision denying this claim is not objectively

13  unreasonable and is not an unreasonable application of, or contrary to, clearly established

14  Supreme Court precedent.

15    *2.  Ground 3 (Sub-Part 2) and Ground 9: Violation of Presumption of Innocence*

16    In his third ground for relief (sub-part 2) and his ninth ground for relief, petitioner alleges

17  that the presumption of guilt prior to and throughout the trial was "routine on the part of the

18  judge and prosecutor" and that it denied petitioner his right to a fair trial. Dkt. 1-1 at 2-3.

19  Petitioner alleges that the trial court judge alerted the jury to petitioner's in-custody status and

20  that petitioner's motion for mistrial should not have been denied. Dkt. 1-1 at 3, 4.

21    The Fourteenth Amendment secures the fundamental liberty of the right to a fair trial.

22  *Estelle v. Williams*, 425 U.S. 501, 503 (1976). The presumption of innocence is a basic

23  component of a fair trial. *Id*. The Supreme Court has determined that due process prohibits

24

certain courtroom practices that have the effect of undermining the presumption of innocence and the fairness of the fact-finding process. *Deck v. Missouri,* 544 U.S. 622, 630 (2005) (compelling a defendant to wear visible shackles at trial without adequate justification violates due process); *Holbrook v. Flynn,* 475 U.S. 560 (1986) (holding that a prisoner was not denied his constitutional right to a fair trial where, at his trial with five codefendants, customary courtroom security force was supplemented by four uniformed state troopers sitting in the first row of spectator section); *Estelle v. Williams,* 425 U.S. 501, 504–05 (1976) (compelling a defendant to appear at trial in jail garb is inherently prejudicial and violates due process).

In *Holbrook,* the Supreme Court held that the "deployment of uniformed state troopers in a courtroom during jury trial is not inherently prejudicial because of the many 'inferences that a juror might reasonably draw from the officers' presence." *Holbrook,* 475 U.S. at 569. The Court further held that:

> While shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable. Jurors may just as easily believe that the officers are there to guard against disruption emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence. Indeed, it is entirely possible that jurors will not infer anything at all from the presence of guards. . . Our society has become inured to the presence of armed guards in most public places; they are doubtless taken for granted so long as their numbers or weaponry do not suggest particular official concern or alarm.

*Id.*

The Washington Court of Appeals denied petitioner's claim:

> O'Haver moved for a mistrial contending that the trial court alerted the jury to O'Haver's custodial status. This court reviews a trial court's denial of a motion for a mistrial under an abuse of discretion standard and will only grant a new trial when a "defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." State v. Lewis, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). This court reviews alleged violation[s] of the right to an

1   impartial jury and the presumption of innocence de novo. State v. Johnson, 125
    Wn. App. 443, 457, 105 P.3d 85 (2005). Curative instructions can sufficiently
2   overcome any prejudice that might have otherwise arisen from inadvertent
    observations of a defendant in shackles. State v. Rodriguez, 146 Wn.2d 260, 270,
3   45 P.3d 541 (2002). When an error can be cured by a curative instruction, a
    defendant waives the error by failing to request such an instruction. Rodriguez,
4   146 Wn.2d at 271. Here, the court simply asked the officer, who had been
    attending court every day, whether he would be there at 9:00 a.m. This is not
5   sufficient to conjure up the image of custody. The court denied the motion for
    mistrial; but in an abundance of caution, offered to give a curative instruction
6   which O'Haver rejected.

7   O'Haver's reliance on State v. Gonzalez, 129 Wn. App 895, 120 P.3d 645 (2005)
    is misplaced. There, the trial court informed the jury that the defendant was in jail
8   because he could not post bail, was being transported in restraints, and would be
    under guard in the courtroom. Gonzalez, 129 Wn. App. at 899. The facts here are
9   simply not that egregious. Any prejudice that may have resulted from the jury's
    knowledge of O'Haver's custodial status is unlikely to have impacted the
10  outcome of his trial. The trial court did not abuse its discretion.

11  Dkt. 10, Exhibit 2 at 8-9 [state court footnotes omitted].

12      The record reflects that the trial court said, "so, officer, we'll see everybody back here at

13  9:00, okay." Dkt. 10, Exhibit 12, Verbatim Report of Proceedings, Volume VII, at 640. The trial

14  court judge's statement to the officer was not state sponsored conduct that would trigger the

15  inherent or actual prejudice as described in *Williams,* 425 U.S. at 504–05. There is nothing in the

16  record that indicates the jury's determination of petitioner's innocence was influenced in any

17  way, and there is no basis for speculating otherwise. As a result, the Court finds that petitioner's

18  trial was not infected with any fundamental unfairness based on the court's comment. *See Deck,*

19  544 U.S. at 630; *Holbrook,* 475 U.S. at 569. Accordingly, the ruling of the state court was not

20  contrary to or an unreasonable application of clearly established federal law. The Court

21  recommends denial of this ground for relief.

22

23

24

REPORT AND RECOMMENDATION - 21

**D. CERTIFICATE OF APPEALABILITY**

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition.

**CONCLUSION**

The Court finds that petitioner failed to show that the state appellate courts' adjudication of grounds 1 (sub-part 2); 3 (sub-part 2), 6 and 9 was contrary to, or an unreasonable application of, clearly established federal law. Petitioner failed to fairly present grounds 1 (sub-part 1), 2, 3 (sub-part 1), 4, 5, 7, 8, 10, 11 and 12 under federal law by invoking one complete round of Washington state court appellate review and therefore, has not exhausted his state remedies as to these grounds for relief. Furthermore, petitioner's grounds 1 (sub-part 1), 2, 3 (sub-part 1), 4, 5, 7, 8, 10, 11 and 12 are time-barred under Washington law and he does not demonstrate cause and prejudice or a fundamental miscarriage of justice; therefore, grounds 1 (sub-part 1), 2, 3 (sub-part 1), 4, 5, 7, 8, 10, 11 and 12 are procedurally barred. Accordingly, the undersigned recommends dismissing grounds 1 (sub-part 1); 2; 3 (sub-part 1), 4, 5, 7, 8, 10, 11 and 12 unexhausted and procedurally barred.  The undersigned recommends denying the issuance of a

certificate of appealability. The Court also recommends that petitioner's motion to appoint counsel (Dkt. 11) be denied as moot.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on **March 4, 2016**, as noted in the caption.

Dated this 11th day of February, 2016.

J. Richard Creatura
United States Magistrate Judge